AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

**C R   18   6 1 4**

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| CHRISTIAN ROMANDETTI, SR. | ) | |
| | ) | **FEUERSTEIN, J.** |
| | ) | |
| | ) | **SHIELDS, M.J.** |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

      **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   CHRISTIAN ROMANDETTI, SR. _____ ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

    Conspiracy to commit securities fraud, conspiracy to commit wire fraud, securities fraud and conspiracy to commit money laundering.

Date:  _____11/14/2018_____

_____
*Issuing officer's signature*

City and state:  _____Central Islip, New York_____

_____
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ |
| Date: _____ |
| _____ *Arresting officer's signature* |
| _____ *Printed name and title* |

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| United States of America<br>v.<br>**FRANK SARRO** | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br>**C R  18  614** |
| _Defendant_ | | |

**FEUERSTEIN, J.**

## ARREST WARRANT

**SHIELDS, M.J.**

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

_(name of person to be arrested)_    **FRANK SARRO**                                                                                    ,

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☐ Complaint

☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to commit securities fraud, conspiracy to commit wire fraud, securities fraud and conspiracy to commit money laundering.

Date:    11/14/2018                        _____
                                                                _Issuing officer's signature_

City and state:    Central Islip, New York                _____
                                                                            _Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____ , and the person was arrested on _(date)_ _____<br>at _(city and state)_ _____ . |
| Date: _____                        _____<br>                                                                _Arresting officer's signature_<br><br>                                                                _____<br>                                                                _Printed name and title_ |

ALB:CNR
F. #2018R00843

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

CHRISTIAN ROMANDETTI, SR.,
FRANK SARRO,
JEFFREY MILLER and
MARK BURNETT,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

**RECEIVED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   NOV 14 2018   ★

LONG ISLAND OFFICE

INDICTMENT

CR 18 614

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18,
U.S.C., §§ 371, 981(a)(1)(C), 982(a)(1),
982(b)(1), 1349, 1956(h), 1957(b),
1957(d)(1), 2 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

**FEUERSTEIN, J.**

## INTRODUCTION

**SHIELDS, M.J.**

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Corrupt Boiler Room and Related Entities

1.    Elite Stock Research ("ESR" or the "Boiler Room") was a purported

financial services business operating from an office located in Plainview, New York, which

promoted the stocks of publicly traded companies to individual investors, primarily through

cold-call campaigns and the circulation of a newsletter. ESR had brokerage accounts in its name

(the "ESR Brokerage Accounts") as well as bank accounts (the "ESR Bank Accounts").

2.    First Choice Healthcare Solutions, Inc., formerly known as Medical

Billing Assistance ("FCHS"), was a publicly traded company with its principal place of business

in Melbourne, Florida, that purported to be a non-physician-owned healthcare provider focused

on orthopedic medicine. FCHS operated approximately five practice locations in central Florida.

FCHS was incorporated by the defendant CHRISTIAN ROMANDETTI, SR., on December 14, 2011. FCHS had bank accounts in its name.

   3.  C&K, LLC ("C&K"), MTCR LLC ("MTCR") and MTKR LLC ("MTKR") were holding companies, incorporated by the defendant CHRISTIAN ROMANDETTI, SR., with their principal places of business in Melbourne, Florida. MedTech Diagnostics LLC ("MedTech Diagnostics") was a Florida company incorporated by ROMANDETTI, with a principal place of business in Melbourne, Florida, which purported to distribute multi-test medical diagnostic equipment. C&K, MTCR, MTKR and MedTech Diagnostics are referred to herein collectively as the "Romandetti Entities." The Romandetti Entities had bank accounts and brokerage accounts, to which ROMANDETTI had access and control.

   4.  East Coast LLC ("East Coast"), Esvee LLC ("Esvee"), First Choice of Colorado Inv., LLC ("First Choice of Colorado"), GG One LLC ("GG One"), Mountain Peak Investments, LLC ("Mountain Peak"), Space Coast LLC ("Space Coast") and Xtreme Racing, Inc. ("Xtreme Racing") were holding companies, incorporated and controlled by the defendant FRANK SARRO, with their principal places of business in Palm Bay, Florida (collectively, the "Sarro Entities"). The Sarro Entities had bank accounts and brokerage accounts, to which SARRO had access and control.

   5.  4J Consulting Corp ("4J Consulting") and Leading Edge of Colorado, LLC ("Leading Edge") were holding companies, incorporated by the defendant JEFFREY MILLER, with their principal places of business in Bellmore, New York (collectively, the "Miller Entities"). The Miller Entities had bank accounts and brokerage accounts, to which MILLER had access and control.

2

6.  Fuse Capital LLC ("Fuse Capital") was a purported personal investment company and investment management company, incorporated by the defendant MARK BURNETT, with its principal place of business in Roslyn, New York. Rhinebeck Capital LLC ("Rhinebeck Capital") was a privately held holding company, incorporated by an individual ("Individual 1"), whose identity is known to the Grand Jury, with its principal place of business in Roslyn, New York. Fuse Capital and Rhinebeck Capital (collectively, the "Burnett Entities") had bank and brokerage accounts, to which BURNETT had access and control.

II.  Relevant Regulatory Principles and Definitions

7.  A "security" was, among other things, any note, stock, bond, debenture, evidence of indebtedness, investment contract or participation in any profit-sharing agreement.

8.  "Microcap" or "penny" stocks referred to stocks of publicly traded U.S. companies that had a low market capitalization. Microcap stocks were often subject to price manipulation because they were thinly traded and subject to less regulatory scrutiny than stocks that traded on notable exchanges. Additionally, large blocks of microcap stock were often controlled by a small group of individuals, which enabled those in the group to control or orchestrate manipulative trading in those stocks.

9.  A "pump and dump" scheme was a scheme in which a group of individuals who controlled the free trading of allegedly unrestricted shares, also referred to as the "float," of a microcap company fraudulently inflated the share price and trading volume of the targeted microcap company through, inter alia, wash and matched trades, press releases and paid stock promotions. When the targeted microcap company's share price reached desirable levels, the individuals sold their free trading shares for substantial financial gain.

3

10.     "Wash trades" were purchases and sales of securities that matched each other in price, volume and time of execution, and involved no change in beneficial ownership. For example, a wash trade took place when Investor A bought 100 shares at $5.00 per share of Company A through Broker A while simultaneously selling 100 shares at $5.00 per share of Company A through Broker B.  "Matched trades" were similar to wash trades but involved a related third person or party who placed one side of the trade.  For example, a matched trade took place when Investor A bought 100 shares at $5.00 per share of Company A through a broker, while Investor B, who coordinated with Investor A, simultaneously sold 100 shares at $5.00 per share of Company A through a broker.  Both wash trades and matched trades were used to create the appearance that the stock price and volume rose as a result of genuine market demand for the securities.

III.     The Defendants and Relevant Co-Conspirators

11.     The defendant CHRISTIAN ROMANDETTI, SR., was the Chief Executive Officer of FCHS and the managing member of C&K.  ROMANDETTI was a signatory on multiple FCHS bank accounts and controlled the Romandetti Entities.

12.     The defendant FRANK SARRO was an associate of the defendant CHRISTIAN ROMANDETTI, SR.  SARRO controlled the Sarro Entities.

13.     The defendant JEFFREY MILLER was an associate of the defendant CHRISTIAN ROMANDETTI, SR.  MILLER controlled the Miller Entities.  MILLER was formerly a registered broker-dealer.

14.     The defendant MARK BURNETT was an associate of the defendant CHRISTIAN ROMANDETTI, SR.  BURNETT controlled the Burnett Entities.

4

IV.    The Pump and Dump Scheme

15.    In or about and between May 2013 and June 2016, the defendants CHRISTIAN ROMANDETTI, SR., FRANK SARRO, JEFFREY MILLER and MARK BURNETT, together with others, engaged in a "pump and dump" scheme to defraud investors and potential investors in FCHS by artificially controlling the price and volume of traded shares in FCHS through, inter alia: (a) artificially generating price movements and trading volume in the shares; and (b) material misrepresentations and omissions in their communications with victim investors about the stock of FCHS, relating to, among other things, the advisability of purchasing such stock. To execute this scheme, the defendants, inter alia, fraudulently concealed their control of shares of FCHS that were held in brokerage accounts in the names of other individuals or entities.

16.    In order to carry out the fraudulent stock manipulation scheme, employees of the Boiler Room obtained shares from insiders at FCHS, including the defendants CHRISTIAN ROMANDETTI, SR., FRANK SARRO, JEFFREY MILLER and MARK BURNETT, at below-market prices, through stock purchase and consulting agreements.

17.    Once employees of the Boiler Room obtained shares in FCHS, the defendants engaged in manipulative trading patterns, including wash trades and matched trades, to drive up the price of the shares, while aggressively and repeatedly calling and emailing victim investors – many of whom were senior citizens – to purchase shares in FCHS. When victim investors indicated a willingness to purchase a recommended stock, the defendants and their co-conspirators at the Boiler Room called the victim investors repeatedly, pressured them to follow through with their purchases and directed them to log into their trading accounts while still on

5

the telephone to place purchase orders for FCHS stock. In some cases, the Boiler Room also charged the victim investors for "subscriptions" to receive stock recommendations.

18. The defendants did not disclose to the victim investors that, contemporaneously with or shortly after their recommendation to the victim investors of the stock of FCHS, the defendants and their co-conspirators sold their own shares of FCHS stock. The victim investors therefore were left with the false and misleading impression that the stock of FCHS was a sound investment in which the defendants and their co-conspirators themselves firmly believed. Ultimately, the defendants profited from that manipulative trading in FCHS shares when they and their co-conspirators sold substantial amounts of the shares at the inflated prices that their fraudulent conduct had generated.

19. As a result of the defendants' fraudulent manipulation of FCHS stock, the defendants earned over $3,000,000 in gross trading profits in personal and corporate accounts that they controlled.

V. The Scheme to Launder the Proceeds of the Pump and Dump Scheme

20. In or about and between September 2013 and June 2016, the defendants CHRISTIAN ROMANDETTI, SR., FRANK SARRO, JEFFREY MILLER and MARK BURNETT, together with others, engaged in a scheme to launder over $3,000,000 in proceeds from the fraudulent scheme to manipulate the share price of FCHS. ROMANDETTI, SARRO, MILLER and BURNETT, together with others, laundered proceeds of their pump and dump scheme by transferring such proceeds from brokerage accounts that they and their co-conspirators controlled through, inter alia, bank accounts in the names of companies controlled by the co-conspirators and other individuals, or by generating stock purchase agreements and consulting agreements to lend the appearance of legitimacy to the transactions. The defendants

6

thereafter transferred those funds or portions thereof to other bank accounts controlled by the defendants from which the funds were withdrawn and used to pay for, inter alia, vehicles and living expenses of the defendants. The defendants knew that such funds were the proceeds of the pump and dump scheme and were consistently withdrawn from defendant-controlled bank accounts as cash in allotments under $10,000 to evade reporting requirements.

COUNT ONE

(Conspiracy to Commit Securities Fraud)

21.     The allegations contained in paragraphs one through 20 are realleged and incorporated as though fully set forth in this paragraph.

22.     In or about and between May 2013 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHRISTIAN ROMANDETTI, SR., FRANK SARRO, JEFFREY MILLER and MARK BURNETT, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (i) employing devices, schemes and artifices to defraud; (ii) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon investors and potential investors in FCHS, in connection with the purchase and sale of investments in FCHS, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

7

23. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants CHRISTIAN ROMANDETTI, SR., FRANK SARRO, JEFFREY MILLER and MARK BURNETT, together with others, did commit and cause to be committed, among others, the following:

## OVERT ACTS

(a) On or about September 17, 2013, MILLER sent an email to an individual ("Individual 2"), whose identity is known to the Grand Jury, and sent a carbon copy to ROMANDETTI. The subject of the email stated "First Choice Healthcare Solutions (FCHS)." In the body of the email MILLER stated, "I hope you will have some time to meet with me & Chris Romandetti from First Choice Healthcare Solutions (FCHS) tomorrow. Let me know your availability. Best Regards, Jeffrey Miller 4J Consulting Corp."

(b) On or about March 18, 2014, MILLER contacted a broker-dealer ("Broker 1"), an individual whose identity is known to the Grand Jury, with whom he had an account, and executed a purchase order of 5,000 shares of FCHS stock at $3.35 per share. At approximately the same time, MILLER sold 5,000 shares of FCHS stock at $3.35 per share out of a different brokerage account under his control.

(c) On or about March 21, 2014, BURNETT contacted a broker-dealer ("Broker 2"), an individual whose identity is known to the Grand Jury, with whom BURNETT had an account, and stated that he had taken both sides of a 100 share trade of FCHS stock.

(d) On or about March 25, 2014, BURNETT conducted matched wash trades using two Fuse Capital brokerage accounts under his control, which were held at two different brokerage houses. At approximately 9:57 a.m., BURNETT sold 10,000 shares of FCHS stock through one account, while he purchased 10,000 shares of FCHS stock through a

8

different account. At approximately 10:08 a.m., BURNETT purchased 6,300 shares of FCHS stock through one account, while he sold 6,296 shares of FCHS stock through a different account.

   (e) On or about October 3, 2014, SARRO received an email from a broker-dealer ("Broker 3"), an individual whose identity is known to the Grand Jury, who executed numerous trades on behalf of the defendants. The subject of the email was "Re: snapshot as of 10-2-14" and the email contained information detailing trading activity related to shares of FCHS stock.

   (f) On or about October 8, 2014, SARRO received an email from Broker 3. The subject of the email was "SNAPSHOT FIRST CHOICE OF COLORADO." The body of the email stated, "Frankieeeeeeeeeeeeeeee Here is your snapshot sir." Additionally, the email contained information detailing trading activity related to shares of FCHS stock. An "out wire" detail for a wire transfer of $36,000 was also shown.

   (g) On or about October 21, 2014, ROMANDETTI received an email from a co-conspirator ("Co-Conspirator 1"), an individual whose identity is known to the Grand Jury, containing an invoice that stated, "Customer, First Choice Healthcare Solutions, 709 S. Harbor City Blvd, Melbourne, Fl 32901, Services Rendered from September 15- November 30, 25,000, As per Agreement."

   (h) On or about May 11, 2015, ROMANDETTI received email from Co-Conspirator 1 that stated, "Dear Chris, As per our Investor Relations Contract, a payment of $25,000 is due. Please forward to: Chase Bank, Syosset, New York, ABA – 021000021, Elite Stock Research Inc., AC# 255267650."

9

(i)     On or about June 22, 2015, ROMANDETTI received an email, of which MILLER received a carbon copy, from Co-Conspirator 1. Attached to the email was a spreadsheet titled "Anthony's Version $ owed.xlsx." The attachment contained a list of FCHS shareholders, with known ESR victim investors highlighted.

(j)     On or about and between June 25, 2015 and June 30, 2015, a brokerage account controlled by SARRO generated approximately $174,151.78 in profits via trades in shares of FCHS stock. The majority of these profits were received via coordinated trades with Co-Conspirator 1 executed through the ESR Brokerage Accounts.

(k)     On or about July 28, 2015, ROMANDETTI received an email from Co-Conspirator 1 with a subject line of "Reconciliation." In the body of the email, Co-Conspirator 1 wrote, "I think we should spend an hour together this week and you can teach me exactly how to reconcile the report and then I can teach [an ESR employee] so you can be free of it. Good?"

(l)     On or about October 2, 2015, a $40,000 wire transfer was made from a Sarro Entities bank account to a co-conspirator ("Co-Conspirator 2"), an individual whose identity is known to the Grand Jury, who worked as a cold-caller for the Boiler Room. On that same day, a $29,230 check was written from a bank account controlled by Co-Conspirator 2 and deposited into an ESR Bank Account controlled by Co-Conspirator 1.

(m)     On or about October 6, 2015, a $20,000 wire transfer was made from a Sarro Entities bank account into a Romandetti Entities bank account. On that same day, a $20,000 wire transfer was made from a Romandetti Entities bank account into an FCHS bank account controlled by ROMANDETTI. Again on that same day, a $35,786.18 payment was made to American Express from the FCHS bank account controlled by ROMANDETTI.

10

(n)     On or about November 13, 2015, ROMANDETTI received an email from Co-Conspirator 1 stating, "Good morning Chris, Please look at yesterday's NOBO and let me know if it reflects favorable results from ESR's subscriber base. Thanks in advance." ROMANDETTI responded by stating, "Will do when we get it. It's not in yet Siu [sic] to them all being closed for Veterans Day, How did are [sic] we doing."

(o)     On or about November 20, 2015, ROMANDETTI received an email from Co-Conspirator 1, and the subject of the email stated, "Need money Send What you can."

(p)     On or about December 16, 2015, ROMANDETTI received an email from Co-Conspirator 1 stating, "The list will completed [sic] today by noon. Sorry for the delay! On a different note: You had told me in the past that you would issue me a couple of hundred thousand warrant at 1.35. Well, the time is here and the time is now. LOL. I am a man of my word as I know you are too. That said, I need some t's crossed so to speak, and I need things done officially. I have to maintain the CFA conduct code." ROMANDETTI responded by email, stating, "Please forward me the list that your earliest convenience as I would like to personally call these people sooner that later...."

(q)     On or about December 17, 2015, ROMANDETTI sent an email to Co-Conspirator 1 stating, "So I removed the names I believe are part of our group. If you could please give me the highlighted ones first, it is investors holding onto 10,000 shares or more. It's only about 50 names this would be a big help as I am planning to contact them tomorrow." Co-Conspirator 1 responded by stating, "K." Attached to the email was a spreadsheet listing FCHS shareholders.

11

(r)     On or about December 21, 2015, ROMANDETTI sent an email to Co-Conspirator 1 stating, "...there's two attachments. One is the current Nobo for last week and the other Excel sheet represents new shareholders from that list for last week. If you could indicate which of the new shareholders you believe are ESR clients I would appreciate. I still haven't received the Nobo list that I thought you were going to marked [sic] up indicating ESR clients? And supply me their phone numbers."

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
### (Conspiracy to Commit Wire Fraud)

24.    The allegations contained in paragraphs one through 20 are realleged and incorporated as though fully set forth in this paragraph.

25.    In or about and between May 2013 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHRISTIAN ROMANDETTI, SR., FRANK SARRO, JEFFREY MILLER and MARK BURNETT, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud investors and potential investors in FCHS, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

## COUNT THREE
(Securities Fraud)

26.     The allegations contained in paragraphs one through 20 are realleged and incorporated as though fully set forth in this paragraph.

27.     In or about and between May 2013 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHRISTIAN ROMANDETTI, SR., FRANK SARRO, JEFFREY MILLER and MARK BURNETT, together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in FCHS, in connection with the purchase and sale of investments in FCHS, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

13

## COUNT FOUR
### (Conspiracy to Commit Money Laundering)

28.     The allegations contained in paragraphs one through 20 are realleged and incorporated as though fully set forth in this paragraph.

29.     In or about and between May 2013 and June 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHRISTIAN ROMANDETTI, SR., FRANK SARRO, JEFFREY MILLER and MARK BURNETT, together with others, did knowingly and intentionally conspire to engage in monetary transactions, to wit: deposits, withdrawals and transfers of funds and monetary instruments, in and affecting interstate commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: fraud in the sale of securities, contrary to Title 15, United States Code, Sections 78j(b) and 78ff, all contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h), 1957(b), 1957(d)(1) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH THREE

30.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to

14

forfeit any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of such offenses.

31.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a)     cannot be located upon the exercise of due diligence;
>
> (b)     has been transferred or sold to, or deposited with, a third party;
>
> (c)     has been placed beyond the jurisdiction of the court;
>
> (d)     has been substantially diminished in value; or
>
> (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT FOUR

32.     The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

15

Case 6:18-mj-01732-TBS Document 1 Filed 11/15/18 Page 18 of 19 PageID 18

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

> (a) cannot be located upon the exercise of due diligence;
>
> (b) has been transferred or sold to, or deposited with, a third party;
>
> (c) has been placed beyond the jurisdiction of the court;
>
> (d) has been substantially diminished in value; or
>
> (e) has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

FOREPERSON

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

16

F.#:2018R00843
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

### EASTERN *District of* NEW YORK

### CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

### CHRISTIAN ROMANDETTI, SR., ET AL.,

Defendants.

# INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 371, 981(a)(1)(C), 982(a)(1), 982(b)(1), 1349, 1956(h), 1957(b), 1957(d)(1), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

*Clerk*

*Bail, $* _____

_____

**Charles N. Rose, Assistant U.S. Attorney (631) 715-7844**